UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**WALK HILL/CANTERBURY
DEVELOPMENT, LLC,**                                    Chapter 11
    Debtor                                                  Case No. 19-10057-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. BACKGROUND**

    Walk Hill/Canterbury Development LLC (the "Debtor") commenced a Chapter 11 case by filing a voluntary petition on January 8, 2019. On the original petition, it did not respond to Question 7 by disclosing that it was a "single asset real estate" business. On January 16, 2019, it filed its Schedules and Statement of Financial Affairs, as well as an Application for Authority to Employ Counsel. On its Schedules it listed ownership of a single asset, namely real property located at "289 Walk Hill Street, 283 Walk Hill Street, 576 Canterbury Street and 578 Canterbury Street in Roslindale, Massachusetts (the "property"), which it valued at $5.9 million. It listed two creditors: Twin Oaks DF 19 LLC ("Twin Oaks") as the holder of a claim in the sum of $4.4 million secured by the property, and the City of Boston as the holder of secured claim for real estate taxes in the amount of $16,000.

1

On its Statement of Financial Affairs, it disclosed no income from January 1, 2017 through the petition date. The Debtor, in an amended petition filed on January 22, 2019, answered question 7 by disclosing that it is a "is a single asset real estate" business as defined in 11 U.S. C. § 101(51B).

At the time Walk Hill commenced its case, Twin Oaks had a foreclosure sale scheduled for January 8, 2019, which Twin Oaks postponed until February 26, 2019. The Debtor and Twin Oaks agreed that Twin Oaks could postpone its foreclosure sale from time to time while the automatic stay was in effect.

On April 3, 2019, the Debtor moved to extend the period of time to file a plan of reorganization because, absent such extension, the automatic stay would terminate on April 7, 2019 pursuant to 11 U.S. C. § 362(d)(3). Twin Oaks objected to the motion. The Court heard the matter on April 8, 2019 and, in light of Debtor's counsel's arguments in which he referenced facts not included in the motion, entered the following order:

> The Debtor shall file an Affidavit of the consultant Donald Taylor by Noon on April 9, 2019, setting forth his efforts to obtain interim or permanent financing both before and after receiving the letter of intent referenced on the record, and the current status of those efforts. The Debtor shall attach to the Affidavit the letter of intent, an explanation of what has happened with regard to the proposed interim financing since the letter of intent was issued, and what the terms of the proposed Chapter 11 Plan would be, by April 9, 2019 at Noon.

The Debtor complied with the Court's order and filed a Statement indicating that that the City of Boston had approved an extension "regarding entitlements until June 23, 2020." The Statement also reference two attached affidavits: the Affidavit of

Donald Taylor, the President of Northeast Capital Group, Inc. ("Northeast Capital"), and the Affidavit of Nabil Boghos, the sole manager/member of the Debtor. Taylor in his Affidavit stated: "[t]he intent of the interim refinancing is to pay in full the claim of Twin Oaks DF 19 LLC and the City of Boston and to dismiss the case." Taylor attached three letters to his Affidavit. The first letter is dated February 1, 2019. In that letter, Northeast Capital conditionally approved the Debtor's application for a first mortgage loan in the amount of $4 million with a six month term at 12% interest (with an 18% default rate), conditioned upon a $6,360,000 appraised value of the property. The second letter is dated April 8, 2019 and reflects Northeast Capital's conditional approval of the Debtor's application for a loan amount of $4.5 million with a six month term, monthly interest payments of $45,000, and the same interest rate and default interest rate as set forth in the first letter.

Finally, Taylor attached to his Affidavit a letter he wrote on behalf of Northeast Capital to Debtor's counsel on April 8, 2019 in which he disclosed that the property "consists of several vacant buildings that are in various states of disrepair" and that, owing to squatters on the property, the City of Boston considered the property to pose a hazard to the community. Taylor added that there had been the smell of gas on the property and water pipes had been leaking. He also disclosed that Northeast Capital had a "construction arm," Northeast Construction & Management, LLC," that was working on the property to remedy dangerous conditions which "coincides with the demolition permit process which has been commenced." Taylor noted that the

3

Debtor had engaged contractors, that the property contains "urban fill along with a minimal contaminated area," and that Northeast Construction & Management hired excavators to remove debris. Taylor also stated: "Financially, The Northeast Capital Group, Inc. has increased its participation with the Debtor which includes an additional infusion and an increased loan amount," adding that Northeast Capital was "currently working with Madison Realty Group and Dominion Financial Services to increase an existing line of credit in the amount of $5,000,000 to a line of credit of $6,000,000." Taylor stated that "Northeast has approved a loan amount of $4,500,000, but with the cost to complete all phases of the permitting process the Debtor will need funds in excess of $5,000,000." Taylor asserted that Northeast Capital is the primary sponsor of the credit facility and will be the primary signatory on all new debt.

Boghos, in an attachment to his affidavit, disclosed the amount of money he had spent to the project, including $181,250 from February of 2018 through February 13, 2019.

Twin Oaks filed a Supplemental Objection to the Amended Motion for an Extension, stating the following:

> In short, the Statement failed to provide any insight into the efforts the Debtor has made in furtherance of its reorganization during this bankruptcy case, nor did it provide any explanation of the terms of Debtor's proposed plan of reorganization. The Statement instead confirmed what the Debtor has been consistently saying during the first 90 days of its bankruptcy case: that it has no intention of reorganizing and that it filed this case with the sole intention of obtaining alternative

> financing to pay the Lender's claim in full and then seek a dismissal. Although remarkably forthright, the Debtor's confirmation of its intention does not provide the "cause" needed to extend the 90 day deadline established by 11 U.S.C. § 362(d)(3). Indeed, it confirms the Lender's belief that there is no reason for the stay to continue in this case because the Debtor has no intention of reorganizing at all.

Twin Oaks added that the Statement filed by the Debtor contained no evidence that the Debtor had met any of the conditions for Northeast Capital's proposed loan.

## II. APPLICABLE LAW

Bankruptcy Code Section 362(d) provides in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

> . . . (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the later than the date after the entry of the order for relief (or such other date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, which is later –
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
> (B) the debtor has commenced monthly payments that-
> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

5

>> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;

11 U.S.C. § 362(d)(3). The purpose of this provision is to make sure that the automatic stay is not abused, while giving a real estate debtor an opportunity to reorganize. See In re Windwood Heights, Inc., 385 B.R. 832, 836 (Bankr. N.D. W.Va. 2008) (citations omitted). In In re RYYZ, LLC, 490 B.R. 29 (Bankr. E.D.N.Y. 2013), the court observed that single asset realty cases, "typically amount to little more than a contest between the debtor and secured lender over real property that is, or can be, the subject of a foreclosure action." Id. at 34. The court added:

> As explained by one court, by enacting Section 362(d)(3) "Congress expressly attempted to avoid the usual delays experienced in Chapter 11 in single asset real estate cases, which historically have been filed to avoid a foreclosure and in the hope that the debtor can come up with some form of a miracle in order to formulate an acceptable plan." NationsBank, N.A. v. LDN Corp. (In re LDN Corp.), 191 B.R. 320, 326 (Bankr.E.D.Va.1996) ("LDN").

In re RYYZ, LLC, 490 B.R. at 34.

A chapter 11 debtor must show "cause for an extension of the 90 day period in the statute. "Based on the history of this provision, courts have been reluctant to extend this time period, except for very good reason, as this provision was designed to protect creditors whose security was a single asset real property from being held up interminably by the debtor who likely was hanging on with little prospect of turning the real estate project around." *See* Joan N. Feeney, Michael G. Williamson, Michael J. Stepan, *Bankruptcy Law Manual,* § 7:55, at 1813 (West Supp. 2018). Courts

have found no cause for an extension under this section where the debtor's request for deferral of its obligations to commence making payments or file a plan is based on a sale of the property, particularly in the absence of evidence that a sale is likely. *See, e.g.,* In re Heather Apartments, L. P., 366 B.R. 45, 50 (Bankr. D. Minn. 2007) ("any proffer of cause for excusing a debtor's compliance must include a concrete substitute for the creditor's statutorily-fixed expectation of payment, if the debtor is to be excused"); *see also* In re Crown Ohio Investments LLC, No. 1-09-46767-DEM, 2010 WL 935576, at *3 (Bankr. E.D.N.Y. Mar. 12, 2010).

### III. ANALYSIS

The Debtor, through its submission of Taylor's Affidavit, reveals that it does not intend to file a plan of reorganization and instead plans to seek dismissal of this case after obtaining refinancing. The Debtor's submissions unequivocally establish that it is unlikely to complete its proposed refinancing as it lacks any income to make monthly payments of $45,000 to Northeast Capital. The refinancing is speculative and does not form the basis of a plan as contemplated by the statute. Moreover, the entire loan transaction is inextricably intertwined with a previously undisclosed "partnership" arrangement with Northeast Capital and Taylor. The Debtor's failure to disclose pre- and post-petition infusions of money and services by its principal and Northeast Capital and/or its construction arm raise troublesome issues as well. Under these circumstances, the Court concludes that the Debtor has failed to

establish "cause" under § 362(d)(3) for an extension of time to file a plan of reorganization.

## IV. CONCLUSION

In accordance with the foregoing, the Court denies the Amended Motion.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 18, 2019